FAIRVIEW HEIGHTS CEMETERY COMPANY, PROSECUTOR, v. THOMAS FAY, COLLECTOR, ETC., RESPONDENT.

FAIRVIEW DEVELOPMENT COMPANY, PROSECUTOR, v. THOMAS FAY, COLLECTOR, ETC., RESPONDENT.

Submitted March 22, 1917—Decided June 6, 1917.

1. The fundamental rule, pervading all exemptions from the general tax burden of the state, is that they are not favored by the law unless the statute invoked to support them expresses the legislative intention in clear and unmistakable terms.

2. It is not reasonable to assume that the power conceded by the legislature to cemetery associations, for the purpose of the protection, under proper management, of the bodies of the dead, is so comprehensive in scope as to enable them to purchase tracts of land, and to hold them unimproved and undeveloped for any purpose out of the taxable assets of township, county and state assessments.

3. Where property, held by a cemetery association, presents no *indicia* of actual use or of reasonably contemplated use, within the statutory purview, such property should not be exempted from taxation.

4. Whether a company, formed under the General Corporation act for general business, may exercise the power and claim the privileges expressly conferred by exceptional legislation upon a distinctive species of corporation, created for the purpose of performing a *quasi*-public function, and existing specially for the purpose therein prescribed, *quære?*

Two writs of *certiorari*, removing assessments and taxes by the borough of Fairview, in the county of Bergen.

Before Justices SWAYZE, MINTURN and KALISCH.

For the prosecutors, *Weller & Lichtenstein*.

For the respondent, *Edwards & Smith*.

The opinion of the court was delivered by

MINTURN, J.   Two cases involving a claim of exemption from taxation are presented by these writs.   In the first instance, the borough of Fairview, in Bergen county, levied a tax on the assessed value of the property of the Fairview Heights Cemetery Company, comprising about fifty acres, for the year 1913.

The prosecutor is organized under the Cemetery act (*Comp. Stat., p.* 370) and owns and manages a cemetery comprising about sixty-five acres, fifty acres of which are not in use for cemetery purposes.   The undeveloped section remains practically in its natural state.   It was assessed and is taxed by the borough, from which assessment the prosecutor appealed to the county board, which board sustained the assessment and tax.   The insistence of the prosecutor is that the entire tract in use and out of use is exempt from taxation.

The Cemetery acts have frequently been before this court, in various aspects of litigation, and from the views expressed as the result of those adjudications, the following principles may be gleaned:   The fundamental rule pervading all exemptions from the general tax burdens of the state, is that they are not favored by the law, and will not be construed to exist unless the statute invoked to support them expresses

the legislative intention in clear and unmistakable terms. *Mausoleum Builders* v. *State Board, &c.,* 88 *N. J. L.* 592; *Cooper Hospital* v. *Camden,* 70 *Id.* 478; *Rosedale Cemetery Co.* v. *Linden,* 73 *Id.* 421.

In enacting legislation of this general character whose main and fundamental purpose is the protection under proper management of the bodies of the dead, it is not reasonable to assume that the power conceded by the legislature to cemetery associations, for that purpose, is so comprehensive in scope as to enable them to purchase tracts of territory and to hold them unimproved and undeveloped for any purpose, out of the taxable assets of township, county and state assessments.

If such a construction of this legislation were to be admitted, there would appear to be no limit to the bounds of the ownership of the corporation, within the terms prescribed in the act, except the financial carrying capacity of the corporation itself, and the following case involving a claim for exemption upon this ground will enable one to perceive how even that protective limitation may be evaded in actual practice.

The mere organization of a company, under the cemetery acts, and the purchase of land thereafter, without expenditure to improve or develop it, but the mere passive holding of the land, as it were by a species of mortmain, is not enough to bring the claim for exemption within the language and spirit of this legislation.

Ownership and use seem to be the legislative tests upon which an exemption from taxation of this character may legally be based. Section 4 of the Rural Cemetery act expressly provides that any portion of a cemetery "not actually set apart and used for burial purposes shall be subject to taxation," &c.

In 1883, this section was amended by a proviso reading that any portion of the property of any such company "not actually set apart and used for burial purposes shall be subject to taxation," &c. *Pamph. L.* 1883, *p.* 123.

The amendment of 1889 made no change in this feature of the legislation. *Pamph. L.* 1889, *p.* 418.

These various enactments are in *pari materia* and must be considered together as presenting a cohesive and consistent legislative scheme declaratory of a state policy of setting aside, by a separate species of tenure, through corporate agencies, sections of land, free from taxation, when such lands are actually in use, or within reasonable contemplation of being used for the purpose declared, in the statute. *Mt. Pleasant Cemetery* v. *Newark,* 89 *N. J. L.* 255; *Rosedale Cemetery* v. *Linden, supra; Mausoleum Builders* v. *State Board, ante* p. 163.

The *locus in quo* in this controversy presents no *indicia* of actual use or of reasonably contemplated use, within the statutory purview, which will enable us to bring it within such a classification, and the tax in question should therefore be affirmed.

The second writ removes an assessment and tax upon twenty-six acres of undeveloped land, situated on the Bergen turnpike and owned by the Fairview Development Company, a corporation not organized under the cemetery acts, but organized for business purposes under the General Corporation act.

It obtained title to the *locus in quo* in 1910, by a conveyance from the Fairview Cemetery Company, for one dollar and other valuable considerations; and thereafter an agreement was executed between the parties to the deed setting out the true consideration of the conveyance ($360,000), and a covenant was entered into with the cemetery company that the latter company might sell burial plots from the land conveyed, upon certain prescribed terms, as to price and conditions. In effect, the instrument constitutes a holding agreement, by which the title to the *locus in quo* is vested in the development company, subject to certain uses; the covenant being in all formal essentials not unlike the common law covenant to stand seized to uses (4 *Kent Com.* 492); the purpose apparently being to vest in the development company, in trust, such lands as the cemetery company could not legally hold by reason of the limitation contained in the cemetery acts.

The land in question is part of forty acres lying west of the Bergen turnpike, and eleven acres of meadow land lying on the east side thereof. Nothing has been done to improve or develop this acreage, for cemetery uses, and it lies in its natural state, impressed with a cemetery use only, so far as the trust expressed in the agreement may impose that character of user upon it.

The situation thus presented in principle is not unlike that presented in the case of *Mt. Pleasant Cemetery* v. *Newark, supra,* and the recent case of *Mausoleum Builders, &c.,* v. *State Board, supra.*

We do not deem it necessary to determine the power of a company, formed under the General Corporation act, for general business purposes, to exercise the power and claim the privileges expressly conferred by exceptional legislation upon a distinctive species of corporation, created for the purpose of performing a *quasi*-public function, and existing specially for the purpose therein prescribed, and for no other; nor do we deem it necessary to determine the further inquiry mooted in the briefs of counsel, whether in such a situation the lands in question can be properly considered as being held for cemetery uses, within the meaning and purview of the cemetery legislation.

It must suffice to declare, as we have done, in the previous instance, and for the reasons there advanced, that the *locus in quo* was not at the time of the imposition of this tax devoted to and in use for cemetery purposes, and for that reason this tax also must be affirmed.